IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

S.C. PERKINS, JR.                                                                                    PLAINTIFF

V.                                                              CIVIL ACTION NO. 4:15-CV-38-SA-JMV

CITY OF GREENWOOD, MS, and
CAROLYN MCADAMS                                                                           DEFENDANTS

MEMORANDUM OPINION

Plaintiff filed this cause of action alleging he was discriminated against in his employment based on his race, age, gender, religion, and political affiliation. The Defendants filed a Motion for Summary Judgment [36] on all the Plaintiff's claims. The briefing is complete, and the Court finds as follows:

*Factual and Procedural Background*

Plaintiff was a police officer for the City of Greenwood Mississippi for twenty-five years. He worked as a patrolman[1] from 1989 until 1995 when he was assigned to the position of litter officer. Although, according to the Plaintiff, his litter assignment was not a promotion, it did entail different duties. As a litter officer, the Plaintiff's primary duties consisted of patrolling the City looking for and enforcing various city ordinances related to litter, abandoned cars, and other property management issues, and fielding related complaints.

In September of 2008, Plaintiff was promoted to the rank of Sergeant, but retained his position as a litter officer. On December 18, 2013, then Interim Police Chief Johnny Langdon reassigned the Plaintiff as a shift sergeant, whose duties primarily consist of patrolling the City, responding to and investigating criminal complaints, and arresting and booking criminal

---

[1] Although the Court recognizes that the term "patrolman" is outmoded nomenclature, the Court will use the term consistent with the parties' use.

suspects. A shift sergeant ranks above the patrolmen on the shift and below the shift lieutenant. In the shift lieutenant's absence, the shift sergeant assumes supervisory duties.

The Plaintiff was unhappy about his reassignment and considered it a demotion orchestrated by the Mayor, Defendant Carolyn McAdams. The Plaintiff contends that McAdams harbored hostility toward him because of his relationship with and support for his brother Willie Perkins and his sister-in-law Sheriel Perkins. Sheriel Perkins was the mayor of Greenwood from 2006 until 2009, when she lost the election to McAdams. Sheriel Perkins again ran against McAdams unsuccessfully in 2013. After the 2013 election, Sheriel Perkins filed a legal challenge to the election result and was represented in that case by her husband, attorney Willie Perkins.[2]

The day following his reassignment, the Plaintiff submitted his application for early retirement benefits, and subsequently resigned, effective January 30, 2014. Plaintiff worked as a shift sergeant for approximately one month. Plaintiff is African-American, and was sixty-six years old at the time he resigned. Patrolman William Blake, a white male approximately fifty years old, replaced the Plaintiff as litter officer.

Plaintiff alleges that the Defendants intentionally discriminated against him when they reassigned him to a patrol shift. Defendants now move for summary judgment on the Plaintiff's claims for discrimination based on race, age, gender, and religion, as well as a First Amendment retaliation claim based on his political association with Sheriel Perkins.

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The Rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion,

---
[2] Willie Perkins is the Plaintiff's counsel in the instant case.

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Affidavits*

As a preliminary matter, the Defendants have challenged the Plaintiff's use of three affidavits, two by former Interim Chief Langdon, and one by former Chief Henry Purnell, arguing that statements contained in the affidavits are not based on personal knowledge, and instead are based on "personal subjective belief[s]" and contain conclusory statements. Federal Rule of Civil Procedure 56(c)(4) states: "An affidavit or declaration used to support or oppose a

motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). Both Purnell and Langdon stated in their depositions, taken after the affidavits were sworn, that some of the statements in these affidavits were not based in fact, but were instead based upon their personal beliefs. Under Rule 56, "the affiant must provide the district court with sufficient information to allow the latter to conclude that the affiant's assertions are indeed based on such [personal] knowledge." *Meadaa v. K.A.P. Enterprises, L.L.C.*, 756 F.3d 875, 881 (5th Cir. 2014) (citing *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507–08 (5th Cir. 2008); *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997)).

The Court finds that several of the statements contained in these affidavits do not meet the "personal knowledge" requirement of Rule 56 and will therefore be stricken from the summary judgment record.

*Race Discrimination*

Plaintiff brings claims of race discrimination pursuant to Title VII, and 42 U.S.C. Sections 1981 and 1983. To succeed on a claim for racial discrimination under any of these statutes, a plaintiff must first prove a *prima facie* case either through direct evidence of discriminatory motive, or circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *see Lee v. Conecuh Cty. Bd. of Ed.*, 634 F.2d 959, 961–62 (5th Cir. 1981); *see also Mason v. United Air Lines, Inc.*, 274 F.3d 314, 318 (5th Cir. 2001). To establish a prima facie case of discrimination using circumstantial evidence under the *McDonnell Douglas* framework, a plaintiff must show that he (1) was a member of a protected group; (2) was qualified for his position; (3) suffered an adverse employment action; and (4) received less favorable treatment

4

than similarly situated individuals outside of his protected group. *McDonnell Douglas,* 411 U.S. at 802, 93 S. Ct. 1817; *Giles v. City of Dallas*, 539 F. App'x 537, 543 (5th Cir. 2013); *Wheeler v. BL Dev. Corp.,* 415 F.3d 399, 405 (5th Cir. 2005).

If a plaintiff establishes a presumption of discrimination by establishing a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The burden on the employer "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).

If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

*Prima Facie Case*

Only the third prong of the *McDonnell Douglas* framework, whether the Plaintiff's reassignment was an adverse employment action, is in dispute in the instant case. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817. An adverse employment action is an employment decision that affects the terms, conditions, or privileges of employment. *Thompson v. City of Waco, Texas*, 764 F.3d 500, 504-05 (5th Cir. 2014), *reh'g en banc denied*, 779 F.3d 343 (2015); *Pegram v. Honeywell, Inc.,* 361 F.3d 272, 281–82 (5th Cir. 2004). Generally, under Fifth Circuit

precedent "an adverse employment action consists of *ultimate employment decisions* such as hiring, granting leave, discharging, promoting, and compensating." *Anthony v. Donahoe*, 460 F. App'x 399, 403 (5th Cir. 2012) (citing *Pegram*, 361 F.3d at 282 (internal quotation marks and citation omitted) (emphasis in original)).

In the context of a transfer or reassignment, whether the employment decision is adverse is gauged under an objective standard. "[W]here the evidence produces no objective showing of a loss in compensation, duties, or benefits, but rather solely establishes that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence is insufficient to establish an adverse employment action." *Id.* (citing *Serna v. City of San Antonio*, 244 F.3d 479, 485 (5th Cir. 2001)). Thus, under certain circumstances, a transfer can be an adverse employment action. The Fifth Circuit has further clarified this objective standard, "[t]o be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement." *Alvarado*, 492 F.3d at 613-14 (citing *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999); *see also Pegram*, 361 F.3d at 283 (holding that "an employment transfer may qualify as an 'adverse employment action' if the change makes the job 'objectively worse.'" (quoting *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 770 (5th Cir. 2001)); *see also Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999) (stating that a plaintiff's subjective preference is irrelevant [. . .]; the proper standard is an objective one).

In a recent case, *Thompson v. City of Waco, Texas*, the Fifth Circuit again visited the issue of when a reassignment may be an adverse employment action, and lowered the standard

6

after examining a number of cases from other appellate courts.[3] *Thompson*, 764 F.3d at 504-05. The *Thompson* court first acknowledged the general rule that "the mere 'loss of some job responsibilities' does not constitute an adverse employment action." *Id*. (citing *Williams v. U.S. Dept. of Navy*, 149 F. App'x 264, 269–70 (5th Cir. 2005); *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 532 n.2 (5th Cir. 2003)); *see also Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 521 (5th Cir. 2001); *Watts v. Kroger Co.*, 170 F.3d 505, 511–12 (5th Cir. 1999). The *Thompson* court then went on to hold that "[t]his does not mean that a change in or loss of job responsibilities can never form the basis of an actionable discrimination claim . . . . In certain instances, a change in or loss of job responsibilities [. . .] may be so significant and material that it rises to the level of an adverse employment action." *Thompson*, 764 F.3d at 504-05 (citing *Schirle v. Sokudo USA, LLC*, 484 F. App'x 893, 898 (5th Cir. 2012)).

The Plaintiff in *Thompson*, a police detective, alleged that the Department stripped him of the "integral and material responsibilities of a detective" such that he "no longer function[ed] as a detective."[4] *Id*. at 504. The court went on to find that Thompson's transfer was an adverse employment action, stating, "he has been effectively demoted to the position of an assistant detective." *Id*. The *Thompson* court placed a "particular importance," and even reiterated in a later case, that Thompson was subjected to an adverse employment action because "he lost his ability to perform his essential job functions in all investigations, not just on certain projects." *Thompson*, 764 F.3d at 504-05; *see also Higbie v. Kerry*, 605 F. App'x 304, 309 (5th Cir. 2015).

---

[3] *See Thompson v. City of Waco, Texas*, 764 F.3d 500, 509 (5th Cir. 2014) (Smith, J., dissenting); *Thompson v. City of Waco, Tex.*, 779 F.3d 343, 344 (5th Cir. 2015) (Jolly, J., dissenting).
[4] Based on allegations that Thompson (African American) and two white detectives had falsified time sheets, the Department imposed written restrictions on Thompson that it did not impose on the two white detectives. "The restrictions state that Thompson cannot (1) search for evidence without supervision; (2) log evidence; (3) work in an undercover capacity; (4) be an affiant in a criminal case; (5) be the evidence officer at a crime scene; and (6) be a lead investigator on an investigation." *Thompson*, 764 F.3d at 502.

In summary, the relevant precedent indicates that a reassignment is an adverse employment action only if the position a plaintiff is reassigned to is an effective demotion, and "objectively worse," and that a plaintiff's subjective preference, for one position over another, or a mere change in schedule is not enough. *Thompson*, 764 F.3d at 504-05; *Alvarado*, 492 F.3d at 613-14; *Sharp*, 164 F.3d at 933; *Pegram*, 361 F.3d at 283; *Serna*, 244 F.3d at 485. Several factors the Fifth Circuit has considered in reassignment claims include: change in title, loss of compensation, change in benefits, loss of prestige, whether the new position is less interesting, loss of opportunity for advancement, and a significant diminishment of material responsibilities. *Thompson*, 764 F.3d at 504; *Anthony*, 460 F. App'x at 403; *Alvarado*, 492 F.3d at 613-14; *Pegram*, 361 F.3d at 282 (5th Cir. 2004); *Sharp*, 164 F.3d at 933.

Examining these factors in the context of the instant case, the Court finds that the Plaintiff's reassignment was not an effective demotion, the Plaintiff's new position was not "objectively worse," and the changes he experienced due to the reassignment did not rise to the level of "significant and material" as contemplated by the relevant precedent. *See Thompson*, 764 F.3d at 504; *Anthony*, 460 F. App'x at 403; *Alvarado*, 492 F.3d at 613-14; *Pegram*, 361 F.3d at 282; *Sharp*, 164 F.3d at 933. The Plaintiff retained the same salary and the rank of Sergeant, and did not experience any change in other benefits as a result of his reassignment. As a litter officer, the Plaintiff had no supervisory authority. As a shift sergeant, the Plaintiff outranked all of the patrolmen on the shift, and in the absence of the shift lieutenant was the ranking authority. According to current Greenwood Police Chief Raymond Moore, the position of shift sergeant is both more important and more prestigious than the position of litter officer. The Plaintiff has offered no argument in rebuttal. All of these factors militate against a finding of an adverse employment action. The parties have not presented any argument or evidence that the Plaintiff

had any more or less opportunity for advancement in either position, or that one position is objectively more interesting.

As a litter officer, the Plaintiff worked Monday through Friday from eight a.m. to five p.m. As a shift sergeant, the Plaintiff worked Tuesday through Saturday from six a.m. to two p.m. Although a change in hours alone is not a basis for a finding of an adverse employment action, this factor militates slightly in favor of a finding of an adverse employment action. *Thompson*, 764 F.3d at 504; *Brooks v. Firestone Polymers, LLC*, 70 F. Supp. 3d 816, 835 (E.D. Tex. 2014).

The remaining factors relate to the specific duties of the relative positions. The Plaintiff was a patrolling law enforcement officer in both positions. His powers and duties at both positions were fundamentally the same, although his enforcement *focus* was different. Although, as a litter officer his enforcement focus was on city ordinances and as a shift sergeant his enforcement focus was on criminal activity, his ultimate responsibility in either position was one of law enforcement. In other words, Plaintiff's position as a litter officer did not relieve him of his more fundamental responsibilities related to general law enforcement, and public safety.[5] Furthermore, the Plaintiff has not established the loss of any investigatory or enforcement privileges.[6] Plaintiff does argue that he preferred the litter officer position and did not ask to be transferred. However, when asked if the litter officer position is "easier" than that of a shift sergeant, the Plaintiff replied, "well, not really. It's just that I liked it better."

Finally, Plaintiff argues that as a shift sergeant it was more likely that he would have to "tussle" with criminal suspects. There is nothing in the record to indicate that as a litter officer

---

[5] The Litter Officer Job Description [36-6] in the record indicates responsibilities including "Patrol City using patrol car . . . issues warning or arrest persons violating City or State Laws, . . . answer calls relating to police matters . . ."
[6] For example, there is nothing in the record that indicates that as a shift Sergeant he could not issue citations for litter issues, or that as a litter Officer he could not make arrests for criminal code violations.

the Plaintiff was guaranteed to be free from the possibility of physical contact with criminal suspects. In the one month that the Plaintiff worked as a shift sergeant, he acknowledges that there were no problems or incidents, and that he was able to perform the job without problem or incident. Therefore, this factor is neutral.

Based on these facts, the Court finds that the factors relating to the duties of the two positions are either neutral or militate slightly against a finding of an adverse employment action. *Compare Thompson*, 764 F.3d at 504 (finding adverse action when a plaintiff lost his ability to perform his essential job functions in all investigations, not just on certain projects), *with Williams*, 149 Fed. App'x. at 269–70, *and Hernandez*, 321 F.3d at 532 n. 2 (holding that the "loss of some job duties" is not an ultimate employment decision). The Court finds that the Plaintiff's reassignment did not rise to level of a significant and material change or loss of job responsibilities, or an effective demotion as required by the applicable Fifth Circuit precedent. Even under the less strict "materially adverse" standard articulated in *Thompson*, the Plaintiff's reassignment did not sufficiently affect the "terms, conditions, or privileges" of his employment to constitute a *prima facie* case of discrimination. *Thompson*, 764 F.3d at 503; *Pegram*, 361 F.3d at 281–82.

*Constructive Discharge*

Plaintiff additionally argues that he was constructively discharged. As the Fifth Circuit has explained, "constructive discharge is not itself a cause of action. It is a means of proving the element of an adverse employment action where the employee quits instead of being fired." *Wells v. City of Alexandria*, No. 03–30750, 2004 U .S. App. LEXIS 8525, 2004 WL 909735, *3 (5th Cir. Apr. 29, 2004). According to the Fifth Circuit Court of Appeals,

> An employee who resigns may demonstrate constructive discharge by two means. First, she can "offer evidence that the employer

> made her working conditions so intolerable that a reasonable employee would feel compelled to resign." *Barrow v. New Orleans Steamship Assoc.*, 10 F.3d 292, 297 (5th Cir. 1994). Second, an employee can prove constructive discharge with evidence that she was given an ultimatum requiring her to choose between resignation and termination. *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997).

*David v. Pointe Coupee Parish Sch. Bd.*, 247 F.3d 240 (5th Cir. 2001). To determine whether a reasonable person would feel compelled to resign, the Court looks for the following factors:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (punctuation omitted). The threshold for demonstrating constructive discharge is a high one. Indeed, a plaintiff must prove "a greater degree of harassment than that required by a hostile environment claim." *Id*. Discrimination alone is insufficient to establish constructive discharge; there must be aggravating factors. *Id*.

In the instant case, the Plaintiff has not alleged specific facts that support a finding that he was constructively discharged. Further, Plaintiff has not alleged any "aggravating factors" to establish constructive discharge. Accordingly, Plaintiff has failed to show he suffered an adverse employment action through constructive discharge.

*Legitimate Nondiscriminatory Reason and Pretext*

Even if the Plaintiff was able to establish a *prima facie* case of discrimination, the Defendants' argue that McAdams had nothing to do with the Plaintiff's reassignment, and that Langdon made the decision unilaterally. Arguing in the alternative, the Defendants assert that

11

there were numerous issues with the Plaintiff's job performance that would constitute legitimate non-discriminatory grounds to reassign him. The Defendants highlight several instances where they allege the Plaintiff failed to follow protocol, such as leaving handwritten notes on abandoned cars instead of issuing citations with the relevant City ordinance attached. The Defendants further allege that the Plaintiff was often unavailable on his city issued cell phone, and that he did not promptly follow up on ongoing violations.

Having met their burden of production as to a legitimate nondiscriminatory reason, the burden shifts back to the Plaintiff to establish that the Defendants' given reason is pretextual. *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097; *St. Mary's*, 509 U.S.at 509, 113 S. Ct. 2742; *Alvarado*, 492 F.3d at 61; *Rachid.*, 376 F.3d at 312; *see also Celotex* 477 U.S. at 324, 106 S. Ct. 2548 (holding "[t]he nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"). Plaintiff does not point to any competent summary judgment evidence that indicates that the Defendants' given reason for reassigning him is not true. The Plaintiff's asserted pretext arguments are either allegations without reference to specific factual bases or rely heavily on the above stricken affidavits of Langdon and Purnell. The Plaintiff argues generally that no other black officers were reassigned during the same time period, but does not bring forth any specific facts that could support a meaningful comparison between the Plaintiff's situation and a situation where an officer in a similar position was *not* reassigned in similar circumstances. The Plaintiff's allegations that McAdams harbored animosity toward the Plaintiff based on his association with Willie and Sheriel Perkins are not relevant to the Plaintiff's race, age, or gender claims.

The Court finds that the Plaintiff's reassignment was not an adverse employment action under the requirements for establishing a *prima facie* case of intentional discrimination based on

race. In the alternative, the Court finds that the Plaintiff has failed to designate specific facts that indicate the existence of a genuine issue of material fact as to the Defendants' given legitimate nondiscriminatory reason for reassigning him. For these reasons, summary judgment is granted in the Defendants' favor on the Plaintiff's claim for discrimination based on race.

*Age and Gender Discrimination*

An adverse employment action is also a required element of *prima facie* cases in gender claims. *Anthony*, 460 F. App'x at 402. The shifting burdens of a legitimate nondiscriminatory reason for the employment decision and a pretext analysis are analogous in race and gender claims. *See Id*.

Similarly, an adverse employment action is a required element of *prima facie* cases in age claims. *Leal v. McHugh*, 731 F.3d 405, 410-11 (5th Cir. 2013). Although age claims are held to a higher "but-for" causation standard than race and gender claims, an analogous pretext analysis applies. *Palacios v. City of Crystal City, Tex.*, No. 14-51176, 2015 WL 4732254, at *3 (5th Cir. Aug. 11, 2015).

Because the Plaintiff has failed to establish that his reassignment was an adverse employment action, and has failed to bring forth competent evidence of pretext, summary judgment is granted in the Defendants' favor on Plaintiff's claims of age and gender discrimination. *Celotex*, 477 U.S. at 322, 106 S. Ct. 2548.

*Religious Discrimination*

Plaintiff alleges that the Defendants' orchestrated his reassignment because they knew it would conflict with his duties as a pastor at two churches. To establish a prima facie case of religious discrimination under Title VII, a plaintiff must present evidence that (1) he held a bona fide religious belief, (2) his belief conflicted with a requirement of his employment, (3) his

employer was informed of his belief, and (4) he suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013) (citing *Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 495, 499 n. 9 (5th Cir. 2001)). As noted above the Plaintiff has failed to establish that his reassignment was an adverse employment action and therefore his claim for discrimination based on religion likewise fails. The Court also notes that Plaintiff has also failed to bring forth evidence that his belief actually conflicted with his religious obligations, and that his employer was informed of a conflict. The Plaintiff states in his deposition that he did not request an accommodation from his employer, and that his schedule during the time he actually worked as a shift sergeant did not conflict with his obligations as a pastor. For these reasons, the Plaintiff has failed to establish a *prima facie* case of discrimination based on religion and summary judgment is granted in the Defendants' favor on this claim.

*First Amendment Retaliation Claim*

Lastly, Plaintiff alleges that the Defendants reassigned him in retaliation for his political support and association with his sister-in-law Sheriel Perkins. According to the Plaintiff, McAdams knew that he supported his sister-on-law in her mayoral campaign against McAdams based on their familial relationship and the fact that he placed a sign supporting Sheriel Perkins in his front yard.

A First Amendment retaliation claim based on political association in the employment context has three elements: (1) the plaintiff suffered an adverse employment decision, (2) he was engaged in protected activity, and (3) the requisite causal relationship between the two exists. *Burnside v. Kaelin*, 773 F.3d 624, 626 (5th Cir. 2014) (citing *Boddie v. City of Columbus, Miss.*, 989 F.2d 745, 747 (5th Cir. 1993)). The analysis of whether an action is an adverse employment

14

decision in the First Amendment retaliation context is analogous to cases utilizing the *McDonnell Douglas* burden-shifting framework. *See, e.g.*, *Burnside*, 773 F.3d at 627 (stating "a retaliatory, demotion-like transfer may constitute an adverse employment action under 42 U.S.C. § 1983"); *Serna*, 244 F.3d at 483; *Hunt*, 277 F.3d at 770 (stating "[a] job transfer may qualify as an 'adverse employment action' for the purpose of a First Amendment retaliation claim under 42 U.S.C. § 1983, if the change makes the job 'objectively worse'").

As discussed above, the Plaintiff's reassignment was not a "demotion-like transfer" or "objectively worse." Therefore, the Plaintiff has failed to establish an essential element of his First Amendment retaliation claim.

Even if the Plaintiff had established that his reassignment was an adverse employment action, his claim would fail for lack of a causal connection between the alleged protected activity and the reassignment. The Plaintiff has not presented any competent summary judgment evidence connecting his reassignment with his political association with his sister-in-law.[7] Comparing the facts of the instant case with *Marek v. Hildebrand*, No. A-07-CA-716 LY, 2008 WL 2954747, at *8 (W.D. Tex. July 31, 2008) (finding factually that candidate for county commissioner threatened county employee that vocally opposed his political bid and supported his opponent with termination if he was elected, and after he was in fact elected gave a raise to all county employees except the individual that opposed him),[8] and *Burnside*, 773 F.3d at 628 (finding factually that Sheriff told Deputy that was also the chairman of a political action committee (PAC) that opposed the Sheriff's reelection that the PAC should support Sheriff's re-election bid then threatened to transfer Deputy to jail duty, if the PAC did not support Sheriff's candidacy. After the PAC failed to endorse Sheriff, he followed through with his threat and

---

[7] After McAdams was elected in 2009, Plaintiff served under her for more than four years.
[8] In the instant case, the Defendant approved a raise for the Plaintiff during her first term.

transferred Deputy to jail duty), the Court finds that the Plaintiff has failed to establish multiple elements of his claim for First Amendment retaliation. Specifically, the Plaintiff has not established that his reassignment was an adverse employment action, and has failed to establish the requisite causal link between his reassignment and his political association. For these reasons, summary judgment is granted in the Defendants' favor on this claim.

*Conclusion*

For all the reasons discussed above, the Defendants' Motion for Summary Judgment is GRANTED, Plaintiff's claims are dismissed, and this CASE is CLOSED.

**SO ORDERED on this the 22nd day of March, 2016**

　　　　　　　　　　　　　　　　　　　　　　　　**/s/ Sharion Aycock**
　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**